**In re MORTIMER.**
**Patent Appeal No. 3010.**

Court of Customs and Patent Appeals.

Dec. 5, 1932.

■

Forbes Silsby and Benjamin Sweedler, both of New York City, for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Mortimer filed his application in the United States Patent Office for a patent on improvements in shingle strips, such as are usually made by saturating a felt base with a waterproofing material, coating the same with a plastic material and applying thereto a layer of mineral wear-resisting material. The Examiner and Board of Appeals rejected all the claims, but on different grounds. The Board of Appeals based its rejection on reference to Heppes (Design) No. 57,126.

Three claims are involved, as follows:

"10. A shingle strip having one longitudinal edge formed with spaced triangular tabs, the sum of the areas of the tabs being substantially equal to the sum of the areas of the spaces upon said edge, said shingle strip having the other edge formed with shingle-like spaced extensions each comprising two rectangular portions joined by sloping lines, the sum of the areas of the shingle-like extensions being substantially equal to the sum of the areas of the intervening spaces, said triangular tabs being oppositely disposed with respect to said shingle-like extensions.

"11. A shingle strip having one longitudinal edge formed with spaced narrow triangular tabs, said shingle strip having the other edge formed with shingle-like spaced extensions each comprising two rectangular portions joined by sloping lines, said triangular tabs being oppositely disposed with respect to said shingle-like extensions.

"13. A shingle strip having one longitudinal edge formed with spaced tabs, the sum of the areas of said tabs being substantially equal to the sum of the areas of the spaces upon said edge, said shingle strip having the other edge formed with spaced shingle-like extensions of a shape different from the shape of said tabs, the sum of the areas of the shingle-like extensions being substantially equal to the sum of the areas of the

spaces on said other edge, said shingle-like extensions being oppositely disposed with respect to said tabs."

Appellant's shingle strip, as disclosed, consists of a strip of material having triangularly shaped tabs on one edge and rectangularly shaped tabs or extensions on the other edge, disposed opposite to said triangularly shaped tabs, which rectangularly shaped tabs consist of rectangularly shaped portions and larger basic rectangularly shaped portions, the smaller and larger rectangularly shaped portions being joined by diagonally disposed margins. The area of each of the respective tabs on both surfaces is equal to the area of the space intervening between said tab and the next tab adjacent thereto.

These shingle strips are made by cutting the same from a strip of material, wide enough for the cutting of two or more shingle strips, and, in such cutting, there is no waste of material except that portion used to make the triangular tabs where the last shingle strip made by the cutting process arrives at the edge of the sheet of material used.

As thus constructed, appellant's shingle strip may be laid with either triangular or rectangular tabs exposed to the weather, and, when so laid, the strips overlap, so that the respective tabs overlie the respective cut-out portions of the underlying strip. At the same time, by the opposite placing of the triangular and rectangular tabs, a great saving of material is effected by the cut-out portion of an underlying strip being immediately beneath a tab upon an overlying strip.

The Board of Appeals was of opinion that appellant's application was anticipated by the design patent to Heppes. Heppes shows a design for a shingle strip, having triangular tabs on one edge. Whether these tabs are of the same area as the intervening spaces is not stated, but for the purposes hereof it may be assumed they are. The other edge of the shingle strip is a straight line, with narrow rectangular slits and cut-out portions opposite the apex of each cut-out portion on the first-mentioned edge.

It is stated by the Board that the Heppes shingle strip may be laid with either the straight or the triangular surface exposed to the weather, and that; when so laid, the square tabs or the triangular tabs, as the case may be, will cover the cut-out portion of the layer beneath. This, it must be conceded, will be the case. However, in so doing, it will be found that a large amount of material is wasted by reason of the larger area of the rectangular tabs, separated only by narrow slits. The advantage which the appellant's shingle strip enjoys of substituting for the larger rectangular tab a relatively smaller triangular one is entirely lost in Heppes. Appellant points out in his brief that this saving amounts to approximately 75 square feet of fabric per 100 shingles over the Heppes shingle strip.

The Board of Appeals states: "The cutting of the edges of the strip in a manner to save material is shown in Heppes' patent as to one edge and to cut the opposite edge in like manner is simply an extension of this old idea."

The difficulty with this position is quite apparent. If the rectangular tabs of Heppes are narrowed until they equal the adjacent cut-out spaces, and an attempt to lay these strips with staggered tabs is made, it will be found that at certain points there will be no head lap, because of the cut-out portions of the respective strips coinciding at such points. It goes without saying that such a shingle strip would be inoperative and leaky.

It cannot properly be said that the change of shape from the pre-existing art, made by appellant, is obvious and not inventive. By using this shape, he has produced a new and useful result, not known to the art, and no reason is apparent why he should not have the protection which the law gives in such cases.

The decision of the Board of Appeals is reversed as to its rejection of appellant's claims 10, 11, and 13.

Reversed.